## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| | : | |
| IN RE: SAMSUNG TOP-LOAD | : | |
| WASHING MACHINE MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS | : | MDL Case No. 17-ml-2792-D |
| LIABILITY LITIGATION | : | |
| | : | District Judge Timothy D. DeGiusti |
| | : | |
| This document relates to: | : | |
| ALL CASES | : | |
| | : | |
| | : | |

# O R D E R

Before the Court is a Motion for an Award of Fees, [Doc. No. 142], filed by Class Counsel.[1]  Several objectors took issue with the requested fees, and Class Counsel filed a Response [Doc. No. 186] in support of the original Motion. The Court then allowed further briefing on the matter once detailed time records were available.  *See* Objector Morgan's Mem. Opp'n [Doc. No. 228].

## BACKGROUND

Class Counsel requests an award of $5,996,079.46 in attorneys' fees and $242,764.47 in expense reimbursement.  Mot. Fees, [Doc. No. 142], at 1.  The requested fee is $260,000 lower than the amount Defendants agreed to pay in negotiations.  *Id.*  Class Counsel further requests $100,000 in Class Representative service awards, or $2,380.95 for each of the 42 Class Representatives. Several objectors take issue with the attorneys'

---

[1] All terms capitalized herein take on the definition ascribed to them under the terms of the Settlement Agreement [Doc. No. 92-1].

fees requested, arguing the amount requested is too high.  *See, e.g.,* Morgan Obj., [Doc. No. 163], at 17–26; Strass Obj. [Doc. No. 186]; Kennedy Obj. [Doc. No. 179].

Negotiations in this case took place before a skilled mediator, Michael N. Ungar. Mot. Fees at 6.  The Parties submitted detailed mediation statements and, over the course of several months, participated in nine days of in-person, formal mediation.  *Id.*  In addition to formal mediation, the Parties advanced the litigation by conferring about discovery and other procedural issues.  *Id*. at 7.  After the principal Settlement terms were reached, the parties engaged in confirmatory discovery.  *Id*.

While the Parties attempted to finalize the Settlement Agreement, co-lead counsel received a letter from attorney Bruce Nagel, stating he planned to seek enforcement of a purported settlement with Samsung, which he claimed to have reached in a federal case  in the District of New Jersey.  *Id*. at 8; *see also* Unopposed Mot. Expedited Hr'g [Doc. No. 84]. The New Jersey case was ultimately consolidated with this action; New Jersey plaintiffs sought approval of their putative settlement, and the Court held a hearing on the competing settlement proposals.  *See* Mot. Enforce [Doc. No. 27]. The matter regarding the competing settlement was resolved by the Court, but significantly complicated the litigation and proceedings related to the Settlement Agreement.

Eventually, the Settlement Agreement was finalized, the Court granted Plaintiffs' Motion for Preliminary Approval [Doc. No. 138], and the Settlement Administrator promptly launched the Settlement Website and issued notice to the Class.  *See* Mot. Fees 9.  Numerous papers were filed surrounding objections, the Fairness Hearing, and matters

regarding final approval of the Settlement. The Court granted final approval on May 22, 2020. *See* Order [Doc. No. 251].

## DISCUSSION

### I.    The Court will apply federal fee jurisprudence as a guide to arrive at the appropriate fee award.

Objector Morgan raises a choice-of-law issue, and disputes Plaintiffs' assertion that New York state law should guide the Court's fee-award determination. *See* Morgan Obj. [Doc. No. 163], at 29.

Plaintiffs cite to *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, in support of their claim that New York law controls the attorneys' fee award. 888 F.3d 455, 460 (10th Cir. 2017); s*ee* Mot. Fees, [Doc. No. 142], at 17 ("the Tenth Circuit applies state law to determine the right to attorney's fees and the method of calculating those fees").

*Chieftain* was a common-fund case, which makes clear that the first step in determining which law to apply is to "distinguish between two different types of attorney fees, depending on the basis for the fee award." 888 F.3d at 460. In this circuit, different labels—substantive and procedural—are used to classify two types of fees. *Id*. Substantive fees are part and parcel of the cause of action over which the Court has diversity jurisdiction. For example, "if the cause of action is for bad-faith denial of insurance coverage and state law authorizes an award of attorney fees to a successful insured, then the right to an award of attorney fees is part of the state substantive right and the federal court must recognize it." *Id.* "In contrast, an attorney-fee award against bad-faith conduct

in the litigation has nothing to do with the nature of the cause of action and does not derive in any way from state substantive law." *Id.*

Plaintiffs' brief indicates that "Class Counsel's entitlement to an award of reasonable attorneys' fees in this case derives from the Settlement Agreement, which contains an explicit choice-of-law provision." Mot. Fees at 17. That provision states that the agreement "shall be construed and governed in accordance with federal procedural law and the substantive law of the state of New York." Settlement Agreement, [Doc. No. 92-1], at 57.

This case is unlike *Chieftain* in that here we do not have a common fund. *See Chieftain,* 888 F.3d at 461. Certainly, like in *Chieftain*, however, "the award is tied to the outcome of the litigation." *Id*. What makes this case decisively different from *Chieftain* is the fact that federal procedural law—the Class Action Fairness Act ("CAFA")—dictates that fees should be calculated using a certain methodology.[2] *See id*. at 463 (noting that Rule 23(h) did not establish a rule of decision for assessing attorney fees because "[i]t does not provide any rules to guide the court on how to calculate the amount of the award"). Unlike Rule 23(h), CAFA provides rules for calculating the awarded fees, indicating that "any attorney's fee award shall be based upon the amount of time class counsel reasonably

---

[2] It is likely that the Court is bound by the choice-of-law clause in the Settlement Agreement. *See MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257, 1260 (10th Cir. 2006) ("In cases like this one, where subject matter jurisdiction is based on diversity of citizenship, federal courts must look to the forum state's choice-of-law rules to determine the effect of a contractual choice-of-law clause."). The Court need not opine on this issue, however, as there is no conflict between New York state law and federal jurisprudence; all roads lead to the application of the lodestar method.

expended working on the action." 28 U.S.C. § 1712(b). Unlike *Chieftain*, the present Settlement Agreement offers, in part, coupon relief for the Class, and CAFA provides that when a settlement incorporates coupon relief, either in whole or in part, any attorneys' fee must be calculated in accordance with CAFA § 1712(a).

In this case there appears to be no true conflict between state law and CAFA. New York law holds that "no single method of determining fees is mandated." *Flemming v. Barnwell Nursing Home & Health Facilities, Inc.,* 56 A.D.3d 162 (N.Y. App. Div. 2008), *aff'd*, 15 N.Y.3d 375, 938 N.E.2d 937 (2010). Two acceptable options are the percentage approach and the lodestar method, the latter having originated in class action litigation. *Id*. (collecting cases). Generally, as the parties concede, federal fee jurisprudence is an appropriate guide when making a reasonableness determination under New York law. *In re HSBC Bank U.S.A., N.A., Checking Account Overdraft Litig*., 29 N.Y.S.3d 847 (Sup. Ct. N.Y. Cty. 2015) (citing *Matter of Rahmey v. Blum*, 95 A.D.2d 294 (2d Dep't 1983) (adopting the federal standard for attorney fee calculations)); *Matakov v. Kel-Tech Constr., Inc.*, 84 A.D.3d 677, 679 n.1 (N.Y. App. Div. 2011) (stating that "[f]ederal jurisprudence is an appropriate guide"); *City of N.Y. v. Maul*, 929 N.E.2d 366 (2010) (noting that "[f]ederal jurisprudence is helpful"). Thus, the Court will apply federal fee jurisprudence as a guide in its determination of the fee award. *See Davis v. Cole Haan, Inc*., No. C 11-01826 JSW, 2013 WL 5718452, at *1 (N.D. Cal. Oct. 21, 2013) (finding that notwithstanding state law, [CAFA § 1712] govern[ed] the calculation of attorneys' fees for coupon settlements in class actions).

II.    **CAFA, like New York state law, allows for the use of the lodestar method in awarding fees.**

Although CAFA defines a variety of terms, it does not define a "coupon." *See* 28 U.S.C. § 1711.  Courts have generally held that "a coupon is a discount on merchandise or services offered by the defendant," which "require[s] class members to do future business with the defendant in order to receive compensation." *See, e.g., True v. Am. Honda Motor Co*., 749 F. Supp. 2d 1052, 1069 (C.D. Cal. 2010).  At the final approval hearing, Plaintiffs argued that the rebates provided under the Settlement do not qualify as coupons.

The Settlement Agreement's Recall Repair Additional Benefit offers either a $25.00 rebate, to be applied toward the purchase of new Samsung microwave, or between $50.00 and $85.00 off the purchase of a new Samsung major appliance.  Order [Doc. No. 251] at 5–6.  Certainly, this benefit is additional to other valuable relief afforded to the Class. Nevertheless, the conclusion that this is a Settlement, which, in part, involves coupon relief is inescapable.

Objector Morgan argues that because the Settlement provides for coupon relief, using the lodestar method to determine the fee award is inappropriate. Objector Morgan contends the Court should not "award attorneys' fees until after the redemption rate is known," as counsel's fee award should be based on actual Class relief.  *See* Objector Morgan's Mem. Opp'n [Doc. No. 228] at 18, 20.

By its text, CAFA directs that when a settlement provides for coupon relief, either in whole or in part, any fee "that is attributable to the award of coupons" must be calculated

using the redemption value of the coupons. 28 U.S.C. § 1712(e). While there is no support for the proposition that CAFA's text precludes using the lodestar method for calculating fees, CAFA's text does introduce a more nuanced issue for the Court to resolve. That is, whether "the practical effect of § 1712(c) is that the district court must perform two separate calculations to fully compensate class counsel." *In re HP Inkjet Printer Litig.,* 716 F.3d 1173, 1184 (9th Cir. 2013).

Arguably, as Objector Morgan suggests, there is some tension between CAFA's text and a strict application of the lodestar methodology. To resolve the dissonance, the majority in *In re HP Inkjet Printer Litigation* concluded that where a settlement provides for both coupon and non-coupon relief, two different calculations must be performed. The first determines a reasonable contingency fee based on the value of the coupons awarded, and the next calculates a reasonable lodestar amount to compensate class counsel for the non-coupon relief obtained. *Id*. at 1185. In this case, Class Counsel's billing records did not differentiate between hours worked on negotiating the Recall Repair Additional Benefit and those spent obtaining non-coupon relief. Indeed, given the structure of the Settlement Agreement, and the tangential benefit the coupons provide, it would have been nearly impossible for them to do so.[3]

---

[3] Objector Morgan contends that the number and distribution of valid claims make this a Settlement predominantly affording coupon relief. *See* Objector Morgan's Mem. Opp'n [Doc. No. 228] at 5. This position entirely discounts the extended warranties implemented by the Settlement Agreement, which are of significant value to the Class. *See Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) (where a defendant window manufacturer had offered extended warranties to purchasers *before* the class litigation and under the proposed settlement could no longer revoke the extended warranties, value was conferred onto the class) (emphasis added); *see also Corzine v. Whirlpool Corp.*, No. 15-CV-05764-BLF,

Precisely because the exact value of each component of the Settlement is difficult to quantify, it makes sense for the hours counsel worked to guide the determination of an appropriate fee. *See* Objector Morgan's Resp. [Doc. No. 211] at 1–2 (noting that while "[c]omponents of the settlement value to the Class are still regrettably unclear," he "does not contend the Settlement did not extract enough value, in the aggregate, from Defendants"). Courts have repeatedly expressed that where relief is not easily monetized, the use of the lodestar method is appropriate. *See Yamada v. Nobel Biocare Holding AG,* 825 F.3d 536, 546 (9th Cir. 2016) (finding the lodestar method "appropriate in class actions where the relief sought and obtained is not easily monetized"); *Strong v. BellSouth Telecommunications, Inc.,* 137 F.3d 844, 852 n.5 (5th Cir. 1998) ("we note that several courts have advocated the use of the lodestar method in lieu of the percentage of fund method precisely in the situation where the value of the settlement is difficult to ascertain, reasoning that there is a strong presumption that the lodestar is a reasonable fee"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 821 (3d Cir. 1995) ("Outside the statutory fee case, the lodestar rationale has appeal where, as here, the nature of the settlement evades the precise evaluation needed for the percentage of recovery method."); *Weinberger v. Great Northern Nekoosa Corp.,* 925 F.2d 518, 526 n.10 (1st Cir.

---

2019 WL 7372275, at *7 (N.D. Cal. Dec. 31, 2019) (finding a "Settlement [was] fair because it significantly expand[ed] the one-year warranty coverage that the Class Refrigerators would have received without the Settlement"); *Eisen v. Porsche Cars N. Am., Inc.,* No. 2:11-CV-09405-CAS, 2014 WL 439006, at *8 (C.D. Cal. Jan. 30, 2014) ("It is significant that the Settlement Agreement provides extended warranty coverage that exceeded the warranties [available]."). The coupons here are simply a benefit additional to other, primary forms of relief.

1991) ("[T]he absence of any true common fund renders the percentage approach inapposite here."); *see also Gascho v. Global Fitness Holdings, LLC*, 2014 WL 1350509 at *34 (S.D. Ohio Apr. 4, 2014) (applying the lodestar method where "the provision for attorneys' fees [was] independent of the award to the Class"), *aff'd*, 822 F.3d 269 (6th Cir. 2016); *Fanning v. Acromed Corp.,* No. 1014, 2000 WL 1622741, at *4 (E.D. Pa. Oct. 23, 2000) (stating that the lodestar method "is also applied when the type of recovery does not allow easy calculation of the settlement's value.") (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 333 (3d Cir.1998), *cert. denied*, *Krell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999)); *accord In re: Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, No. 1:08-WP-65000, 2016 WL 5338012, at *22 (N.D. Ohio Sept. 23, 2016) ("in cases like this one, where the settlement provides for a claims-made structure that has no upper cap on relief, courts typically use the lodestar method").

Where a settlement provides for coupon relief only as part of the total compensation to the Class, most circuits considering the issue[4] have concluded that a straightforward application of the lodestar method is an acceptable way of calculating a reasonable fee. *See, e.g., In re Easysaver Rewards Litig.*, 906 F.3d 747, 759 (9th Cir. 2018), cert. denied sub nom. *Perryman v. Romero*, 139 S. Ct. 2744, 204 L. Ed. 2d 1147 (2019) (stating that "[i]n particular, in a mixed settlement, a district court may use the lodestar approach"); *Galloway v. Kansas City Landsmen, LLC*, 833 F.3d 969, 974 (8th Cir. 2016) ("The principal focus of § 1712 was to mandate more careful scrutiny of coupon settlements to

---

[4] The Court was unable to locate any guidance from the Tenth Circuit on this point. Appellate decisions from sister circuits are nevertheless persuasive.

ensure that the degree of success was properly evaluated."); *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) (holding that §1712 permits a district court to use the lodestar method to calculate attorneys' fees to compensate class counsel for the coupon relief obtained for the class); *Blessing v. Sirius XM Radio Inc.,* 507 F. App'x 1, 5 (2d Cir. 2012) (approving the fee award after determining it was reasonable under the lodestar method, which reflects "the amount of time class counsel reasonably expended working on the action," and finding it consistent with CAFA); *accord Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877, 895 (C.D. Cal. 2016).

Further, if the Court were to employ two separate calculations, first setting aside a portion of the fee theoretically attributable to the coupons to be later disbursed once the redemption value of the coupons is known, and next awarding a lodestar-derived fee based on the billing records, it runs the risk of over compensating Class Counsel for efforts undertaken to obtain coupon relief.  There is no principled way for the Court to isolate hours spent working to obtain non-coupon relief, and the difficulties in monetizing all components of the relief afforded by the Settlement Agreement further complicate the process.

Persuaded by the appellate decisions finding the lodestar method most appropriate under the circumstances, and finding this method consistent with New York state law, the Court will use it to determine a reasonable attorneys' fees award.

III.   **The kicker and clear-sailing provisions are not per se unlawful, and there is no additional evidence of self-dealing.**

Objector Morgan points the Court in the direction of the Settlement Agreement's "kicker" and "clear-sailing provisions," as they relate to attorneys' fees.  *See* Morgan Obj. [Doc. No. 163] at 22.

A "kicker agreement"[5] reverts back to the defendant any money not paid out as attorneys' fees.  *In re Bluetooth Headset Prod. Liab. Litig. ("Bluetooth I"),* No. CV07ML1822DSFEX, 2009 WL 10680029, at *4 (C.D. Cal. Oct. 22, 2009), *vacated*, 654 F.3d 935 (9th Cir. 2011).  "If the defendant is willing to pay a certain sum in attorneys' fees as part of the settlement package . . . there is no apparent reason the class should not benefit from the excess allotted for fees." *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011).

The parties adequately refute this objection, and the Court finds it should be overruled.  In *Bluetooth Headset Products Liability Litigation*, the Ninth Circuit vacated the award by a district court and flagged as potential issues a kicker agreement and a clear-sailing provision.  *Id.*  But on remand, the district court adhered to its initial findings but more carefully addressed several factors as to why the court originally arrived at the same

---

[5] The Court notes that the Settlement Agreement does not contain a true kicker agreement, as kicker agreements usually involve money that was initially allocated to the class, which is never claimed and therefore reverts to the defendant.  *See, e.g., Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 281 (7th Cir. 2002) ("Any money left in the fund after the expiration of the period for filing claims was to revert to the defendants.").

conclusions. *See In re Bluetooth Headset Prod. Liab. Litig. ("Bluetooth II")*, No. 07-ML-1822 DSF EX, 2012 WL 6869641, at *1 (C.D. Cal. July 31, 2012).

The fact that Defendants were willing to pay a certain amount of money in attorneys' fees, in light of the way the fees were negotiated in this case, does not militate against Class Counsel's position. Certainly, Samsung—as an entity with finite resources—agreed to pay a certain amount in fees, and that agreement had the theoretical consequences of redirecting those resources from going directly to the Class. The Court's role here, however, is not to scrutinize whether the final agreement the Parties reached is the best deal possible. Objector Morgan points to no direct evidence of collusion or self-dealing, and the kicker provision is not unlawful per se.

Another feature of the Settlement Agreement subject to scrutiny is the inclusion of a "clear-sailing clause"—a clause in which the defendant agrees not to contest class counsel's request for attorneys' fees. Because, typically, it would be in a defendant's best interest to contest a request for fees in order to reduce the overall cost of the settlement, it is reasonable to assume that a defendant will not agree to a clear-sailing clause without compensation. Presumably, this compensation takes the form of a reduction in the part of the settlement that goes to the class members. The existence of such clauses thus illustrates the danger of collusion in class actions. *Redman v. RadioShack* Corp., 768 F.3d 622, 637 (7th Cir. 2014).

There is, however, a persuasive counterpoint. In *Malchman v. Davis*, the Second Circuit stated as follows:

> [W]here . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems . . . that an agreement 'not to oppose' an application for fees up to a point is essential to the completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged.

761 F.2d 893, 905 n.5 (2d Cir.1985), *cert. denied*, 475 U.S. 1143 (1986). Such is the case here. Further, as in *Bluetooth II,* "by virtue of [Objector Morgan's] objection, [C]lass [C]ounsel has lost the benefit of the clear sailing agreement." *See* Resp. [Doc. No. 187] at 10.

The Court has been mindful of the well-established proposition that Rule 23 requires a district court to carefully examine the record to satisfy itself that the Settlement Agreement is not the product of collusion or self-dealing. *See Gascho v. Glob. Fitness Holdings*, LLC, 822 F.3d 269 (6th Cir. 2016) (finding a district court did not abuse its discretion because inclusion of clear-sailing and kicker clauses did not render settlement unfair or unreasonable). The Court is satisfied that collusion and self-dealing are not at issue here and has scrutinized the ultimate benefit to the Class in its determination of the final fee award.

## VI.    The lodestar sought is supported and reasonable under the circumstances.

The lodestar calculation is simple in its methodology: reasonable rates multiplied by reasonable hours. *See Chieftain*, 888 F.3d at 458. Plaintiffs have provided detailed time records, a redacted version of these records has been made publicly available, and the Court has carefully reviewed the submission. Objector Morgan has filed briefing on the matter [Doc. No. 228].

In his Memorandum on Class Counsel's detailed billing records Objector Morgan raises an objection as to the rate for paralegals. He also claims that staffing could have been more efficient.  Objector Morgan's Mem. Opp'n [Doc. No. 228] at 1.

Where litigation features a national scope and requires a "highly-specialized" opposing counsel, national rates should apply to determining the lodestar. *Cf. Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (explaining that national rates are appropriate when the "subject of the litigation is . . . unusual").  Defendants retained three specialized class-action-defense firms from around the country, and the subject of this litigation is highly specialized. *See In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 660 (E.D. La. 2010) (Where the "attorneys come from states across the country…a more national rate is the appropriate pole star to guide the Court."). Class Counsel's detailed billing records attribute 1767.25 hours to the work of paralegals, which amount to about 40.73% of the total hours billed.  The average rate billed for paralegal work was $282.24/hour.  Courts around the country have approved paralegal rates like those claimed here.  *See, e.g., In re Navistar MaxxForce Engines Mkt., Sales Prac. & Prods. Liab. Litig.*, No. 14- 10318, 2018 WL 316369, at *3 (N.D. Ill. Jan. 21, 2020) (approving requested lodestar-based fee); *Seaman v. Duke Univ.*, No. 15-462, 2019 WL 4674758, at *5 (M.D.N.C. Sept. 25, 2019) (expressly approving "$280–$390 for paralegals and other support staff").

Further, the Court is hesitant to second-guess Class Counsel's staffing decisions and, seeing no obvious outlier in the detailed billing records, the Court declines Objector Morgan's invitation to do so. This objection is overruled.

The Court finds the following to be reasonable and adequately supported by the detailed billing records: 6172.95 hours resulting in fees in the amount of $2,951,067.50.[6] After careful review of the detailed billing records along with Objector Morgan's briefing on the matter, the Court finds the number of hours worked is reasonable under the circumstances, particularly considering the scope of the litigation, the issues involved, the skill required to manage the litigation, and the results obtained for the Class. The hours billed demonstrate appropriate billing judgment and avoid duplicative efforts. For example, 70% of all hours billed were attributed to paralegals, law clerks, and associates, while only 30% of hours billed were the result of partners' more expensive time.

Class Counsel's billing rates are reasonable for their respective geographic areas in comparable cases, and Class Counsel's affidavits support the request's reasonableness. *See* Federaman Decl. [Doc. No. 142] Ex.1; Lichtman Decl. [Doc. No. 142] Ex.2. Class Counsel provided evidence of an hourly rate between $330 and $1,050 for partners on the case, with

---

[6] The summary of hours submitted with Plaintiff' Motion documented a total of 5231.3 hours and $2,573,424.66. *See* Mot. Fees [Doc. No. 142]. Once the detailed billing records were submitted, the Court's calculations revealed that the detailed billing records included 6179.00 hours and $2,956,422.26. There were, however, duplicate entries in the records consisting of 6.00 hours and $3,875.00. *See* Detailed Billing Records [Doc. No. 190] at 1–2. And the Court thereafter noticed several instances in which the number of hours billed multiplied by the proffered rate did not equal the dollar amount claimed. For example, in the final entry for Greg Coleman, .20 hours were billed at a rate of $250. *See id.* at 154. The total amount claimed was $40.00, but $250 multiplied by .20 is $50.00. Twenty-six entries under the detailed records for Levin, Sedran & Berman contained erroneous calculations, and two more did so under Finkelman. Adjustments were made to account for these discrepancies. Objector Morgan's numbers varied slightly. *See* Objector Morgan's Mem. Opp'n [Doc. No. 228] at 2. The Court used the descriptions provided in Plaintiff's Motion to designate entries in the detailed billing records to either partners, paralegals, associates, or law clerks. *See* Mot. Fees [Doc. No. 142] Ex.1 at 12–16.

rates varying appropriately based on experience.  Over 92% of partner time billed fell into the $565–$850 range.  The average partner hour was billed at $716.64; the average associate hour was billed at $447.32, and the average rate overall was $478.06/hour.

These are consistent with rates approved in multidistrict litigation.  *See, e.g., In re Mercedes-Benz Tele Aid Contract Litig.*, No. 07-2720, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (approving hourly rates ranging from $500 to $855 for partners and $265 to $445 for associates in multidistrict litigation based on similar cases in other metropolitan areas); *see also Seaman*, 2019 WL 4674758, at *5 (applying a lodestar cross-check and finding comparable rates reasonable); *In re Syngenta AG MIR 162 Corn Litig.,* 357 F. Supp. 3d 1094, 1115 (D. Kan. 2018) (rates averaging under $500 per hour in an MDL settlement context were reasonable "considering the scope and complexity of th[e] litigation"); *In re Shop-Vac Mktg. & Sales Practices Litig.,* No. 2380, 2016 WL 7178421, at *15 (M.D. Pa. Dec. 9, 2016) (collecting cases) (stating that approved awards of attorneys' fees in class action settlements reached rates of $835.00/hour or averaged $681.15/hour); *In re High-Tech Employee Antitrust Litig*., No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (finding rates falling into comparable ranges reasonable). Accordingly, the Court approves a lodestar amount of $2,951,067.50.[7]

---

[7] The Tenth Circuit has recognized Supreme Court jurisprudence indicating that the *Johnson v. Ga. Highway Exp. Inc.,* 488 F.2d 714 (5th Cir. 1974), factors are "usually . . . subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.,* 616 F.3d 1098, 1103 (10th Cir. 2010) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). New York law indicates the Court should consider whether the fee is appropriate in light of, *inter alia*, the time and labor required, the difficulty of the questions involved, the skill required to manage the case and the qualifications of counsel, the benefit to the class, and customary

### VII.   A lodestar multiplier of 1.3 is appropriate under the circumstances.

After a court determines the lodestar amount, it may increase or decrease that amount by applying a lodestar multiplier.  The applicable multiplier is based on "other less objective factors," such as the risk of the litigation and the performance of the attorneys. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *accord Ousmane v. City of N.Y.,* 880 N.Y.S.2d 874 (Sup. Ct. 2009). "Typical multipliers range from one to four depending on the facts." *Cook v. Rockwell Int'l Corp.,* No. 90-CV-00181-JLK, 2017 WL5076498, at *4 (D. Colo. Apr. 28, 2017) (collecting cases).

Both Class Counsel and Objector Morgan suggest that this litigation involved some risk, and the Court acknowledges that there were unforeseen complications connected to the related litigation in New Jersey.  *See* Mot. Fees at 20.  Class Counsel investigated the case, filed complaints, resisted motions to dismiss, vigorously negotiated the Settlement Agreement, and shepherded the Settlement Agreement through final approval.  Class Counsel have requested what amounts to roughly twice lodestar.

The Court finds a multiplier of 1.3 will more appropriately compensate Class Counsel for their risk and extensive work on this complex case, as well as for the favorable results obtained for the Class.  In arriving at this figure, the Court considered the above-mentioned unforeseen complications in the litigation and the risks undertaken by Class Counsel, particularly at its outset. Class Counsel also obtained valuable concessions from

---

fees for similar services. *See Gordon v. Verizon Commc'ns, Inc.*, 148 A.D.3d 146, 147 (N.Y. App. Div. 2017).  As detailed above, the Court's conclusions are drawn in light of these considerations.

Defendants following the Fairness Hearing.  *See* Order [Doc. No. 251] at 5 n.6. These are factors not subsumed in the lodestar calculation, but which merit consideration in awarding reasonable compensation.  *See Mishkin v. Zynex, Inc.,* No. 09-CV-00780-REB-KLM, 2012 WL 4069295, at \*2 (D. Colo. Sept. 14, 2012) (approving a 25% fee, representing a multiplier of .80, and collecting cases); *see also Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1046 (9th Cir. 2002) (collecting cases and finding that a majority of awarded multipliers fall between 1.0 and 3.0). The multiplier selected by the Court brings the total award up to $3,836,387.75.

Although these judgments go beyond mere mathematical models, the Court is mindful of its obligation to ensure the reasonableness of this award.  As a safe-guard, the fairness of the result obtained under either the lodestar method or the percentage-of-the-fund method is sometimes cross-checked against the other.[8]  *See Galloway,* 833 F.3d at 975 ("Frequently, the court may find it useful to 'double-check' the fee using both methods."); *In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 300 (3d Cir. 2005) ("Regardless of the method chosen, we have suggested it is sensible for a court to use a second method of fee approval to cross-check its initial fee calculation."); *Vizcaino,* 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."); *Goldberger,* 209 F.3d at 50 ("Indeed, we encourage the practice of requiring

---

[8] Although the Court has been unable to locate guidance from the Tenth Circuit on this point, it appears none of the circuits have expressly rejected this approach, and most either require or encourage the undertaking.  *See* 5 NEWBERG ON CLASS ACTIONS § 15:88 (5th ed.).

documentation of hours as a 'cross check' on the reasonableness of the requested percentage."); *see also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ("If the lodestar were grossly disproportionate to the percentage fee award being considered, the Court would adjust downward from its baseline."); *In Re Teletronics Pacing Systems, Inc.,* 137 F. Supp. 2d 1029 (S.D. Oh. 2001) (stating that "the Court uses the actual percentage-of-the-fund derived as a means of checking for any significant variations between the two methods, in order to assess the lodestar's accuracy" and applying multiplier of 1).

Based on the latest estimates before the Court, the value of the Settlement Agreement[9] ranges from about $6.55 to $11.42 million. *See* Pl's Suppl. Br. [Doc. No. 206] at 1. These estimates do not include the value of thousands of presumptively invalid claims waiting to be cured. Further, at the time these figures were provided to the Court, review of claims remained ongoing. *See id*. Additionally, the value of several intangible benefits is not reflected in these numbers. *See Yamada,* 825 F.3d at 546 (a settlement's components were valuable, though not easily monetized, as they were "intangible benefits, including the peace of mind that comes with the enhanced warranty and streamlined claims process"). Class Counsel's $3,836,387.75 fee equates to anywhere from 33.6% to 58.4% of the roughly estimated value of the Settlement. The mean value of the Settlement is approximately $8.98 million, with the fee then representing 42% of that estimate.

---

[9] To avoid having the value of the coupons inappropriately inform the Court as to the reasonableness of the lodestar, the Court has excluded that component from all estimated totals.

Because monetizing the value of the Settlement in this case is particularly difficult, the Court finds the cross-check helpful only in detecting a gross disproportionality between the awarded amount and the benefits conferred upon the Class. *See Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) (affirming a fee award on the basis that a district court used its valuation of the fund only as a cross-check of the lodestar amount, "reject[ing] the idea of a straight percentage recovery because of its uncertainty as to the valuation of the settlement," where the class was not entitled to cash compensation and the settlement was difficult to value).

These numbers—especially given that the valuation of the Settlement considers only readily quantifiable benefits—do not suggest the lodestar, as adjusted by a modest multiplier, is unreasonably overcompensating Class Counsel. *See Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (stating that while there is "no hard and fast rule mandating a certain percentage. . . because the amount of any fee must be determined upon the facts of each case," the median award falls between 20% and 30%, and sometimes awards exceed 50%); *Smith v. Tower Loan of Miss., Inc*., 216 F.R.D. 338, 368 (S.D. Miss. 2003), *aff'd*, 91 F. App'x 952 (5th Cir. 2004) (noting that "[n]o general rule can be articulated on what is a reasonable percentage of a common fund" quoting 5 NEWBERG ON CLASS ACTIONS § 15:72 (5th ed.)). The Court is therefore satisfied that the fee awarded is reasonable under the circumstances.

### VIII.  Class Counsel's request for reimbursement of expenses is reasonable.

The law entitles Class Counsel to the reimbursement of out-of-pocket expenses advanced for the Class. *See In re Williams Sec. Litig.—WCG Subclass*, 558 F.3d 1144,

1147 (10th Cir. 2009). Here, Class Counsel request reimbursement for $242,764.47 of costs and expenses paid out-of-pocket for the benefit of the Class, as provided for in the Settlement Agreement.

The Court finds this request is reasonable and adequately supported. The Court therefore awards $242,764.47 in reimbursement of expenses to Class Counsel.

### IX.    The Court approves incentive awards for the 42 Class Representatives.

The Court approves Class Counsel's request for $100,000 in Class Representative service awards, or $2,380.95 per Class Representative. Courts regularly award class representatives service awards, also known as "incentive awards," in recognition of plaintiffs' service to the class. *See* NEWBERG ON CLASS ACTIONS § 17:1 (5th ed.) ("[T]he payments aim to compensate class representatives for their service to the class and simultaneously serve to incentivize them to perform this function."); *Chieftain*, 888 F.3d at 467 ("Courts have recognized that an award may be appropriate to provide an incentive to act as a named plaintiff.").[10]

The total amount requested for the 42 Class Representatives is reasonable in light of the work and commitment demonstrated by the representatives. Importantly, it does not

---

[10] Although this appears to be an unsettled area of New York law, class representative awards have been deemed "warranted to the extent that they seek reasonable compensation for time and effort expended on behalf of the class." *In re HSBC Bank U.S.A., N.A., Checking Account Overdraft Litig.*, 29 N.Y.S.3d 847 (N.Y. Sup. 2015); *see Fiala v. Metro. Life Ins. Co.*, 899 N.Y.S.2d 531 (Sup. Ct. 2010) ("New York's statutory scheme for class actions does not provide for incentive fees. Nor does it prohibit such awards.").

reduce the amounts paid to Class Members, and it is not opposed by any objector. *See Charles v. Avis Budget Car Rental, LLC*, No. 152627/2016, 2017 WL 6539280, at *2 (N.Y. Sup. Ct. Dec. 21, 2017) (applying New York law and finding a $10,000 service award reasonable where the representative had "advance[d] the prosecution and resolution of the lawsuit"); *Cox v. Microsoft Corp.*, 26 Misc. 3d 1220(A), 907 N.Y.S.2d 436 (Sup. Ct. Feb. 2, 2007) (applying New York law and finding an incentive award of $7,500 per plaintiff reasonable because it "reward[ed] the named plaintiffs for the effort and inconvenience of consulting with counsel over the many years this case was active and for participating in discovery, including depositions").

**IT IS THEREFORE ORDERED** that Class Counsel's Motion for an Award of Fees [Doc. No. 142] is **GRANTED IN PART**.  All objections raised as to these matters are hereby overruled. The Court awards $3,836,387.75 in attorneys' fees, $242,764.47 in expenses, and $100,000 in service awards, to be distributed consistently with this order. A separate judgment will be entered accordingly.

**IT IS SO ORDERED** this 11th day of June, 2020.

TIMOTHY D. DeGIUSTI
Chief United States District Judge

22